**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ROY DURHAM, JR. ) | CASE NO. 1:14-cv-00142 |
| ) | |
| Petitioner, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| DONALD MORGAN, Warden ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |
| ) | |

Petitioner Roy Durham ("Durham"), challenges the constitutionality of his conviction in the case of *State v. Durham*, Cuyahoga County Court of Common Pleas Case No. CR-525549. Durham, represented by counsel, filed a Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on January 22, 2014. On March 14, 2014, Warden Donald Morgan ("Respondent") filed a Motion to Dismiss the petition as time-barred. (ECF No. 8.) Durham, through counsel, filed a response on March 24, 2014. (ECF No. 9.) For reasons set forth in detail below, it is recommended that Durham's petition be DISMISSED.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Durham's conviction as follows:

[*P4]  According to the evidence presented at trial, Durham and the victim, Rosalynn Harrell, were friends, having met in 2005.  Harrell worked as a secretary, and took an active role in activities at her church.  By 2007, Durham was living with Harrell at her apartment; although she supported him, he controlled the household finances.

[*P5]  On the morning of Tuesday, October 2, 2007, Durham became angry at Harrell, accusing her of having eavesdropped on one of his conversations.  He struck her three or four times in the face, then dragged her to the bedroom.

[*P6]  Once there he placed her in a chair, struck her again, knocked her to the floor, picked her up, pushed her back onto the chair, then tied her to it.  He used two belts and a towel. With one belt, he tied her hands behind the chair.  He placed a towel in her mouth as a gag, then tied a smaller belt around her head to hold the towel.

[*P7]  When Harrell was secured, Durham told her he believed she was involved in a plot against him. He called her names and threatened to kill her. Occasionally, he untied her hands only to permit her to write confessions about her role.

[*P8]  Harrell did not write "fast enough for him" at one point, so Durham went to the kitchen, obtained a knife, and stabbed her in her right shin.  Approximately twenty minutes later, he threw salt into her wound.

[*P9]  Durham kept Harrell captive in the chair until evening.  By that time, he was "calmer," became solicitous, and permitted Harrell to go to bed.  The following day, Harrell remained with Durham because she was bruised and fearful of his reaction if she should attempt to leave.  He reinforced her fear when he became angry again at something she did, "went to yelling and went to hitting [her] with a meat tenderizer" he was using to crush pain medicine.  Harrell attempted to ward off the blows, but one struck her hard in her left hand.

[*P10]  On Thursday, Durham escorted Harrell to a grocery store and a "tackle shop"; he drove Harrell's car.  He also insisted she wear sunglasses to hide her facial bruises.

[*P11]  By Friday, Harrell's leg wound was infected.  Durham drove her to an "urgent care" facility, ordered her to explain she sustained her injuries when someone "jumped her," and dropped her off.  She obeyed his enjoinder.  Durham returned for Harrell as soon as she received some treatment.

[*P12]  That evening, Harrell's church pastor, Cornelius White, came to Harrell's apartment, worried because, by that time, she had missed several church

obligations for which she had volunteered.  White spoke to Durham over the intercom; Durham told White that Harrell was not at home and he thought she was "at her mother's."  Durham asked White if he wanted to "come in and see."

[*P13]  White demurred, but informed Durham he would return if he did not find Harrell.  Although White attempted to contact Harrell's mother, he received no answer.  Church matters thereafter replaced his concern over Harrell's whereabouts.

[*P14]  Harrell remained in her apartment with Durham the next day and on Sunday, seeking to keep him pacified.  Thus, she missed Sunday church services.  That evening, Harrell's sister telephoned White, indicating that Harrell had not been in touch with her family for nearly a week.  The call galvanized White into action.  He assembled four other church members and they proceeded to Harrell's apartment.

[*P15]  This time, White and two other churchmen went directly to Harrell's apartment door, pounded on it, and refused to believe Durham when he told them Harrell was not there.  White demanded to be admitted. Durham finally opened the door to confront White, but retreated when he saw White's companions.

[*P16]  When White entered the apartment, he saw Harrell "laying in a corner broke down in an infant-type position"on the bedroom floor; she appeared "broken."  Harrell was unkempt and had difficulty in getting to her feet, so one of the churchmen helped her outside.  Upon seeing Harrell's condition, White's wife called the police.  Durham, however, did not stay; he drove away in Harrell's car.

[*P17]  Emboldened by her church and family, Harrell provided a written statement to the police detailing her experience.  She also obtained a protective order against Durham.

[*P18]  Durham subsequently was indicted in this case on five counts, charged with two counts of kidnapping, two counts of felonious assault, and one count of intimidation of a crime victim.  His case proceeded to a jury trial.

[*P19]  The state presented the testimony of Harrell, a few of her acquaintances from church, and police officers who became involved in the case.  At the conclusion of the state's case, the trial court granted Durham's motion for acquittal as to one count of kidnapping.  Durham elected to present no evidence.

[*P20]  The jury found Durham guilty of one count of kidnapping, and the two counts of felonious assault, but not guilty of intimidation.  At sentencing, the trial court merged the two counts of felonious assault pursuant to R.C. 2941.25(A), and imposed consecutive terms of five years on count one and four years on count

-3-

three.

*State v. Durham*, 2011 Ohio App. LEXIS 1914, 2011-Ohio-2256 at ¶¶4-20 (Ohio Ct. App., May 12, 2011).

## II.  Procedural History

### A.  Conviction

In May of 2009, a Cuyahoga County Grand Jury charged Durham with two counts of kidnapping in violation of Ohio Revised Code ("O.R.C.") § 2905.01(A)(2) & (A)(3), two counts of felonious assault in violation of O.R.C. § 2903.11(A)(1) & (A)(2), and one count of intimidation of a crime victim or witness in violation of O.R.C. § 2921.04(B).  (ECF No. 8-1, Exh. 1.)

On January 15, 2010, a jury found Durham guilty of one count of kidnapping and two counts of felonious assault, but not guilty of intimidation of a crime victim or witness.[1]  (ECF No. 8-1, Exh. 4.)  On January 29, 2010, the trial court sentenced Durham to an aggregate term of nine years incarceration.[2]  (ECF No. 8-1, Exh. 5.)

### B.  Direct Appeal

On February 26, 2010, Durham, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising the following assignments of error:

---

[1] At the conclusion of the prosecution's case, the trial court granted Durham's motion for acquittal as to the second kidnapping charge pursuant to Criminal Rule 29.  (ECF No. 8-1, Exh. 3.)

[2] The trial court merged the felonious assault convictions, for which Durham received four years incarceration, and added five years for kidnapping.  The sentences were to be served consecutively.  (ECF No. 8-1, Exh. 5.)

-4-

> 1. The trial court erred by permitting the complaining witness to testify based on "refreshed recollection" without a proper foundation.
>
> 2. The trial court erred by admitting hearsay to improperly bolster the testimony of a key state witnesses.
>
> 3. Cumulative error prejudiced Mr. Durham.
>
> 4. The trial court erred by imposing consecutive sentences without making findings as required by R.C. 2929.14(E).
>
> 5. The conviction and sentence violates Mr. Durham's Right to the effective assistance of counsel.

(ECF No. 8-1, Exh. 7.)

On May 12, 2011, Durham's conviction and sentence were affirmed.  (ECF No. 8-1, Exh. 9.)

Durham did not file an appeal with the Supreme Court of Ohio.

### C.  Postconviction Petition to Vacate

On March 12, 2011, Durham, *pro se*, filed a petition to vacate or set aside his judgment. (ECF No. 8-2, Exh. 16.)  On March 5, 2011, the State filed a motion for summary judgment. (ECF No. 8-2, Exh. 17.)  On June 28, 2011, the trial court entered a *nunc pro tunc* entry granting the State's motion for summary judgment on Durham's petition.  (ECF No. 8-2, Exh. 20.)

Several months later, on December 1, 2011, Durham filed a motion for findings of fact and conclusions of law with respect to his previously denied petition to vacate his sentence.  (ECF No. 8-2, Exh. 31.)  On February 9, 2012, the trial court issued its findings of fact and conclusions of law indicating that Durham's claims were barred by *res judicata*.  (ECF No. 8-2, Exh. 21.)

On March 2, 2012, Durham, through counsel Robey, appealed the denial of his petition to vacate arguing that the trial court: (1) erred by failing to make specific findings of fact and

-5-

conclusions of law regarding the claim of ineffective assistance of trial counsel; and, (2) abused its discretion by dismissing Durham's petition without a hearing.  (ECF No. 8-2, Exhs. 22 & 23.)

On September 13, 2012, the state appellate court held as follows:

> [*P1]  Defendant-appellant Roy Durham, Jr. sought postconviction relief from his conviction for felonious assault and kidnapping.  He claimed that he was denied the effective assistance of counsel because his trial attorney failed to investigate and subpoena potential witnesses and failed to utilize exculpatory evidence at trial.  The state argued that Durham's claims were barred by *res judicata* because the evidence submitted in support of the petition was available to Durham prior to trial.  The court denied relief finding that none of the documents that Durham offered were outside the original record and that other evidence did not amount to newly discovered evidence outside the record.
>
> [*P2]  R.C. 2953.21(A)(1) permits a person convicted of a criminal offense, and who claims that there was a denial or infringement of the person's rights under either the Ohio Constitution or the United States Constitution, to file a petition asking the court to vacate or set aside the judgment. R.C. 2953.21(A)(2) states that a petition for postconviction relief must be filed "no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction[.]"  The time requirements for postconviction relief under R.C. 2953.21(A) are jurisdictional. *State v. Hutton*, 8th Dist. No. 80763, 2007 Ohio 5443, ¶23.
>
> [*P3]  The state argues that Durham did not timely file his petition for postconviction relief[.]  It maintains that the record in Durham's direct appeal was filed June 10, 2010 and that Durham did not file his petition for postconviction relief until March 12, 2011 — a time period exceeding 180 days.  It further argues that Durham did not explain the delay by advising the court that he had been "unavoidably prevented" from discovering the facts that he was relying upon in the petition nor did he claim entitlement to a new federal or state right that applied retroactively to his situation.  *See* R.C. 2953.23(A).
>
> [*P4]  The state's recitation of facts is correct — more than 180 days elapsed from the time the record was filed in Durham's direct appeal to the time he filed his petition for postconviction relief.  So on the face of the record, Durham's petition was untimely.
>
> [*P5]  Although Durham filed a supplemental record in his direct appeal on September 13, 2010, this filing did not extend the time in which to file the petition for postconviction relief.  The filing of a supplemental record "is irrelevant for the purposes of the 180-day time limit for a postconviction relief

-6-

> petition." *State v. Rice*, 11th Dist. No. 2010-A-0046, 2011 Ohio 3746, ¶ 26.  "For purposes of determining when the 180-day time period for filing a postconviction relief petition shall accrue, only the certified, written transcript constitutes a 'transcript' under App.R. 9 and R.C. 2953.21(A)(2) * * *."  *State v. Everette*, 129 Ohio St. 3d 317, 2011 Ohio 2856, 951 N.E.2d 1018, syllabus.  And in *State v. Chavis-Tucker*, 10th Dist. No. 05AP-974, 2006 Ohio 3105, the court of appeals rejected a contention that the 180-day time period to file a petition for postconviction relief began from the filing of two supplemental transcripts of pretrial hearings.  *Id*. at ¶ 7-9.
>
> [*P6]  The rationale behind these holdings is that an appellant should not be allowed to unilaterally extend the statute's time limitation by filing irrelevant transcripts of pretrial hearings months after the filing of his trial transcript.  *State v. Johnson*, 11th Dist. No. 99-T-0143, 2001 Ohio App. LEXIS 494 (Feb. 9, 2001); *Chavis-Tucker* at ¶ 8.
>
> [*P7]  Durham received permission to supplement the record with proceedings in CR-504209.  That was a previous case number involving the same charges.  It had been dismissed without prejudice by the state and refiled as CR-525549.  Nothing in the record from CR-504209 had any relevance to the appeal from Durham's conviction in CR-525549.  Durham also received permission to supplement the record with proceedings from a domestic violence case in the Bedford Municipal Court.  Again, the record from the municipal court case had no relevance to the appeal in CR-525549.
>
> [*P8] Although the court did not state timeliness as a basis for denying the requested relief, we may *sua sponte* raise timeliness because it is a jurisdictional issue.  *State v. Hill*, 160 Ohio App.3d 324, 2005 Ohio 1501, 827 N.E.2d 351, ¶ 15 (8th Dist.).  We conclude that the filing of the supplemental record in Durham's direct appeal did not extend the time to file a petition for postconviction relief.  The certified, written transcript from that appeal was filed on June 10, 2010.  Durham did not file his petition for postconviction relief until March 12, 2011 — a period in excess of 180 days.  This deprived the court of jurisdiction to consider the petiton for postconviction relief.

*State v. Durham*, 2012 Ohio App. LEXIS 3674, 2012-Ohio-4165 at ¶¶1-8 (Ohio Ct. App., Sept. 13, 2012).

On October 17, 2012, Durham, through counsel filed a notice of appeal.  (ECF No. 8-2, Exh. 27.)  After briefing, on January 23, 2013, jurisdiction was declined.  (ECF No. 8-2, Exh. 30.)

**D. Application to Reopen Appeal**

On August 10, 2011, Durham, *pro se*, filed an application to reopen his appeal pursuant to Ohio App. R. 26(B) arguing ineffective assistance of appellate counsel. (ECF No. 8-1, Exh. 10.) On October 20, 2011, counsel for Durham[3] filed a Notice of Appearance and filed leave the next day to file a supplemental application. (ECF No. 8, Exhs. 11, 32.) On October 5, 2011, Durham's *pro se* Rule 26(B) application was stricken *sua sponte* as exceeding page limitations. (ECF No. 8-2, Exh. 32.) Nonetheless, the state appellate court granted counsel's motion for leave to file a supplemental application, which the court treated as a motion to file an application that complied with the rules. *Id*. On November 21, 2011, Durham's counsel filed the application to reopen.[4] (ECF No. 8-1, Exh. 11.)

On May 4, 2012, the state appellate court denied the application to reopen. (ECF No. 8-2, Exh. 15.) As with the denial of his direct appeal, Durham did not seek review by the Ohio Supreme Court.

**E. Federal Habeas Petition**

On January 22, 2014, Durham filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

GROUND ONE: Ineffective Assistance of Trial Counsel.

---

[3] This marks the first appearance of attorney Gregory Robey on behalf of Durham. Attorney Robey also represents Durham herein, though the attorney/client relationship appears to be contentious.

[4] On March 22, 2012, Durham, despite being represented by counsel, filed a *pro se* supplemental brief in support of the application. (ECF No. 8-2, Exh. 14.) The court indicated that such filings are not permitted without leave of court, but, nevertheless, reviewed the arguments therein and found them meritless. (ECF No. 8-2, Exh. 15 at ¶19.)

-8-

> GROUND TWO: Ineffective Assistance of Appellate Counsel.
>
> GROUND THREE: Trial Court improperly erred by permitting victim to testify based upon "refreshed recollection" without a proper foundation.
>
> GROUND FOUR: Trial Court erred in allowing the Prosecution to improperly bolster.
>
> GROUND FIVE: Cumulative error by Trial Court unfairly prejudiced Durham.
>
> GROUND SIX: Trial Court improperly imposed consecutive sentences.

(ECF No. 1.)

### III. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

**A. One-Year Limitation**

In the instant action, Respondent asserts that Durham's petition is time-barred.  (ECF No. 8 at 9.)  Following trial, Durham timely filed a direct appeal.  (ECF No. 8-1, Exh. 6.)  The state appellate court ruled on May 12, 2011.  (ECF No. 8-1, Exh. 9.)  Durham then had forty-five days, until June 26, 2011, to timely appeal to the Ohio Supreme Court.  *See* Ohio Sup. Ct. Prac. R. 2.2(A)(1).  Because he did not file an appeal by June 26, 2011, his conviction became final at the end of that day and the statute of limitations started running on June 27, 2011.  Forty-four (44) days of the one-year statute of limitations had elapsed when, on August 10, 2011, Durham filed an application to reopen pursuant to Ohio App. R. 26(B).  (ECF No. 8-1, Exh. 10.)  The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003).  "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law."  *Id.* As such, the statute of limitations did not resume running until May 5, 2012, the day after the state appellate court denied Durham's application to reopen.  (ECF No. 8-1, Exh. 15.)  Therefore, absent any additional tolling, the statute of limitations would expire on March 22, 2013.

-10-

The question remains whether Durham was entitled to statutory tolling during the time his petition to vacate, filed on Match 12, 2011, and the appeals ensuing from that petition, were pending. It is well established that only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 3 (2007); *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905, *2, Case No. 2:08cv1168 (S.D. Ohio Jan. 8, 2009). Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling. *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

The state appellate court determined that Durham's petition to vacate was untimely thereby depriving the trial court of jurisdiction to consider the petition. (ECF No. 8-2, Exh. 26.) As such, the time period while the petition to vacate was pending – March 12, 2011 through February 9, 2012 – did *not* toll the statute of limitations. It is not entirely clear whether Durham's potentially timely appeals from his untimely (and therefore not properly filed) petition to vacate has a tolling effect on the statute of limitations. In *Parsons v. Turner*, 2013 U.S. Dist. LEXIS 183368 (N.D. Ohio, Nov. 19, 2013), this Court observed that its own review had not unearthed any controlling case law directly on point. However, in *Pace*, the Supreme Court expressed reservations about the wisdom of tolling where a petition is untimely. 544 U.S. at 413 ("On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction

-11-

petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay."); *see also Lynch v. Wilson*, 2009 U.S. Dist. LEXIS 6702 at **4-5 (N.D. Ohio Jan. 30, 2009) (rejecting a report and recommendation and finding that subsequent appeals from improperly filed postconviction actions failed to toll the statute of limitations under the AEDPA) (Oliver, J.) This Court found that a petitioner should not enjoy the benefit of statutory tolling by promptly appealing from an otherwise improperly filed collateral petition. *Parsons*, 2013 U.S. Dist. LEXIS 183368. Without any tolling during the appeals from his petition to vacate, the statute of limitations expired on March 22, 2013 – long before Durham filed his petition ten months later on January 22, 2014.

However, assuming *arguendo* that Durham is entitled to statutory tolling from the date he appealed the dismissal of his untimely petition to vacate until the Supreme Court of Ohio denied his appeal – March 2, 2012 until January 23, 2013 – his habeas petition would still remain untimely. (ECF No. 8, Exhs. 22, 26, 27, 30.) Prior to filing, the statute of limitations had run for 44 days between June 27, 2011 and August 10, 2011. It resumed running no later than January 24, 2013, the day after the Supreme Court of Ohio declined jurisdiction over Durham's appeal stemming from his petition to vacate. *See Lawrence v. Florida*, 549 U.S. 327, 332, 127 S. Ct. 1079, 166 L. Ed. 2d 924 (2007) (the statute of limitations period is not tolled for collateral proceedings under § 2244(d)(2), during the 90 days in which a petitioner can file a petition for a writ of *certiorari* to the United States Supreme Court). No tolling occurred from January 24, 2013 until December 11, 2013 when the statute of limitations expired. Durham, through counsel, did not file his habeas petition until over a month later, January 22, 2014. As such, his petition is

-12-

untimely.[5]

Therefore, unless equitable tolling is appropriate or Durham is entitled to begin calculating the statute of limitations from an alternative date, his petition should be dismissed as time-barred.

**B.    Factual Predicate**

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims presented" was not discovered by a petitioner, acting with due diligence, until a later date. Durham has not argued that the factual predicate of his claims could not have been discovered until a later date. (ECF No. 9.) Furthermore, such an argument would be unreasonable in light of Durham's grounds for relief. He argues that trial counsel and appellate counsel were ineffective, that the victim was permitted to testify based upon "refreshed recollection" without a proper foundation, that the prosecution was improperly permitted to bolster, that there was cumulative error during trial, and that the trial Court improperly imposed consecutive sentences. With the exception of the claim of ineffective assistance of appellate counsel, the factual predicate of all these claims were immediately discoverable by Durham at the conclusion of trial and after sentencing. As to the claim of ineffective assistance of appellate counsel, the factual predicate of that claim was also discoverable after new counsel filed appellate briefs on Durham's behalf and, therefore, well before the statute of limitations commenced.

**C.    Equitable Tolling**

Although the Petition herein is untimely, the AEDPA statute of limitations period is also

---

[5] It also bears noting that Durham's response does not allege that his petition was timely filed, but rather argues that equitable tolling is appropriate and that he is actually innocent of the crimes of which he was convicted. (ECF No. 9.)

-13-

subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L. Ed. 2d 130 (2010).  Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010); *see also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011).  However, the equitable tolling doctrine is granted by courts only "sparingly."  *See Robertson*, 624 F.3d at 784.  Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling."  *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (*quoting Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir.2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish (1) that he has been pursuing his rights diligently, and, (2) that some extraordinary circumstance stood in his way and prevented timely filing.  *Holland*, 130 S.Ct. at 2565; *see also Hall*, 662 F.3d at 749; *Griffin*, 308 F.3d at 653.  "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence."  *Holland*, 130 S.Ct. at 2565.  That being said, the Sixth Circuit has held that excessive delays in filing lack appropriate diligence.  *See e.g. Keeling v. Warden*, 673 F.3d 452, 463-64 (6th Cir. 2012); *Vroman*, 346 F.3d at 605 (stating that a court should be "much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights").

Here, Durham asserts that equitable tolling is appropriate because he has pursued his rights diligently.  (ECF No. 9 at 3.)  The Court disagrees.  As pointed out by Respondent, Durham failed to pursue his direct appeal and application to reopen his appeal all the way to the Ohio Supreme Court.  (ECF No. 17 at 3.)  The only decision Durham appealed all the way to the state's Supreme

-14-

Court was his petition to vacate, which was itself untimely filed.  Such inaction and tardiness can hardly be portrayed as diligence.  A court should be "much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights."  *Vroman*, 346 F.3d at 605, *quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *accord Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Garrison v. Warren Corr. Inst.*, 1999 U.S. App. LEXIS 13314 (6th Cir. Jun. 10, 1999).

Furthermore, Durham argues that he lacks formal education and comprehension of the law.  (ECF No. 9 at 4.)  That Durham did not have the benefit of counsel for discretionary appeals does not change the Court's conclusion.  *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (remarking that "even a *pro se* litigant ... is required to follow the law" in denying a plaintiff equitable tolling).  "Given that the vast majority of prisoners could, like [petitioner] does before us, allege ignorance of the law until an illuminating conversation with an attorney or fellow prisoner, [petitioner's] alternative construction – that legal norms constitute 'facts' for [statute of limitations] purposes – would in effect write the statute of limitations out . . ., rendering it a nullity.  This we will not do."  *Chattams v. Rossi*, 2012 U.S. Dist. LEXIS 132188 at **19-20 (S.D. Ohio, Sept. 17, 2012) (*quoting U.S. v. Pollard*, 416 F.3d 48, 55, 367 U.S. App. D.C. 386 (D.C. Cir. 2005); *cf. Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (rejecting the 28 U.S.C. § 2254 habeas petitioner's argument that the statute of limitations begins to run 'when a prisoner actually understands what legal theories are available').

Durham did not pursue his rights diligently.  Nonetheless, the lack of legal training or lack of

counsel on discretionary appeal do not constitute extraordinary circumstances.[6] If it did, nearly every *pro se* petitioner would be able to make such a claim.

**D. Actual Innocence**

In *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013), the United States Supreme Court recently held that actual innocence, if proved, may overcome the expiration of AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1). *Id*. at 1931.

> In addition to clarifying that there are no temporal limitations to presenting evidence in support of an actual-innocence claim, *McQuiggin* also reiterated the standard needed to make one out. *Id*. at 1931. The touchstone of the inquiry is whether a petitioner's "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [him].'" *Id*. at 1933 (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (internal quotation marks omitted). With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred." *Id*. (internal quotation marks omitted).

*Eberle v. Warden, Mansfield Corr. Inst.*, 532 Fed. Appx. 605, 612-613 (6th Cir. 2013)

---

[6] "The constitutional right to appointed counsel extends to the first appeal of right and no further." *Tanner v. Jeffreys*, 516 F.Supp.2d 909, 916-17 (N.D. Ohio 2007) (*citing Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (stating "Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals .... Ineffective assistance on a discretionary appeal or in a post-conviction proceeding, both of which are proceedings in which there is no constitutional right to counsel, cannot constitute cause for a procedural default.") As such, the lack of appointed counsel during discretionary appeals does not constitute an extraordinary circumstance.

The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" *McQuiggin*, 133 S.Ct. at 1928.  In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 298.  In the instant case, Durham argues that he is actually innocent based on four separate statements/letters by the victim indicating that it was not Durham who attacked her. (ECF No. 9 at 5, citing Tr. 387-394.)  These statements by the victim do not constitute "new" evidence, as they were, in fact, presented at trial. (Tr. 387-392, Def.'s Exhs. 1-4.)  Even if the Court were to construe these letters as "new," they can hardly be characterized as "reliable" given that the victim testified she wrote them at Durham's behest and that one of the letters was even dictated by him.  (ECF No. 14, Tr. 363-76, 387-393.)  Moreover, the jury heard these other statements and yet convicted Durham.

Durham also points to an affidavit, dated December 30, 2010, of an individual named Yvonne Childress as "new" evidence of his innocence.[7]  (ECF No. 9 at 5.)  The affidavit post-dates the incident by three years.  Childress states that on October 3, 2007, at approximately seven in the evening, she saw five "girls" fighting on East 144th Street in Cleveland, Ohio.  (ECF No. 15 at 45.)

---

[7] It is questionable whether Childress's affidavit should be considered "new" under the *Schlup* standard, given that the affidavit explicitly states that Childress was introduced to defense counsel prior to trial.  "There is a circuit split about whether the 'new' evidence required under *Schlup* includes only newly discovered evidence that was not available at the time of trial, or broadly encompasses all evidence that was not presented to the fact-finder during trial, *i.e.*, newly presented evidence." *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir, 2012) ("Our opinion in *Souter* suggests that this Circuit considers 'newly presented' evidence sufficient.") (citing *Connolly v. Howes*, 304 Fed. App'x. 412, 419 (6th Cir.2008).  Respondent suggests that the decision not to call Childress as a witness appears to be one of trial strategy.  (ECF No. 17 at 9, citing Tr. 486-488.)

-17-

She states that four of them ran past her house and drove away, and that the remaining woman was the victim herein. *Id.* First and foremost, Childress's statement is not truly *exculpatory*. It does not preclude Durham's convictions for kidnapping and felonious assault. The victim clearly testified that she was punched by Durham, that he tied her to a chair for most of the day, threatened her repeatedly, stabbed her with a knife, and had rubbed salt in her stab wound – all on October 2, 2007, the day *before* the events described by Childress in her affidavit. (Tr. 292, 318-330.) The victim's testimony was further corroborated, to an extent, by the testimony of pastor White. Pastor White indicated that he went to the victim's apartment, where Durham initially refused to let him in and falsely denied that the victim was home. (Tr. 209-212.) Pastor White then testified that he eventually entered the apartment with two other gentlemen and found the victim lying in a corner "broke down in an infant-type position." (Tr. 212.) One of the other gentleman, Curtis Hayden, also corroborated pastor White's testimony. (Tr. 239-243.) At best, Childress's affidavit offers another possible explanation for some of the victim's injuries. Nonetheless, even if a jury credited Childress's testimony, it would not necessarily have precluded Durham's convictions for kidnapping and assault.

Second, without any detail as to the surrounding circumstances, Childress's statement bears no indicia of trustworthiness. It fails to explain how Childress recognized the victim (*i.e.* whether they were prior acquaintances). It also fails to explain how Durham came to learn of Childress's alleged eyewitness account. Furthermore the affidavit does not say anything about any of the female assailants carrying a knife that would explain the victim's stab wound on her lower right leg. (Tr. 288.). Finally, Childress's affidavit is cumulative of the version of events contained in the victim's "recantations," which the jury heard and plainly rejected. As stated by the Sixth

-18-

Circuit, "actual innocence 'does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.'" *Cleveland*, 693 F.3d at 633 (quoting *Schlup* 513 U.S. at 329). In *Freeman v. Trombley*, 483 Fed. App'x 51 at 59-60 (6th Cir. 2012), the Sixth Circuit found that the affidavit of the petitioner's ex-girlfriend was not the sort of exculpatory, trustworthy eyewitness account needed to establish the petitioner's actual innocence. Though it is unclear what sort of relationship Childress has with Durham, if any, some of the other factors discussed in *Freeman* are present herein. The affidavit post-dated the events by several years; defense counsel knew of the witness but did not call her to testify; and, the testimony was cumulative. *Id*.

"In keeping with Supreme Court authority, the Sixth Circuit has also recognized that the actual innocence exception should remain rare and only be applied in the extraordinary case." *Sachs v. McKee*, 2014 U.S. Dist. LEXIS 59820 (E.D. Mich Apr. 30, 2014) (internal quotation marks omitted) (citing *Souter*, 395 F.3d at 590.) A non-exculpatory affidavit without any indicia of trustworthiness does not constitute that rare or extraordinary case contemplated by the Sixth Circuit or the Supreme Court. Under these circumstances, this Court cannot find that it is more likely than not that no reasonable juror would have convicted Durham even with Childress's testimony. Thus, the Court finds Durham has not demonstrated he is entitled to the actual innocence exception under the circumstances presented herein. Accordingly, and in light of all of the above, it is recommended the Court find the instant Petition is time-barred under § 2244(d)(1).

### IV. Pending Motions

Durham, through counsel and on his own, has filed several motions still pending before the Court. He has filed a *pro se* Motion to Inform the Court of Conflict between counsel and himself,

as well as a request for an evidentiary hearing. (ECF No. 6.) Thereafter, Durham, through counsel, filed a Motion for an Evidentiary Hearing without specifying the purpose of the hearing. (ECF No. 11.) Given the determination that Durham's petition is untimely, Durham's motions (ECF Nos. 6 & 11) are DENIED as moot.

On April 17, 2014, Durham's counsel filed a motion to withdraw asserting that Durham insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification or reversal of existing law. (ECF No. 13.) Counsel further avers that Durham, by filing notices of conflict, has rendered it unreasonably difficult for him to carry out his duties effectively.[8] *Id*. Durham has not filed a response. Given that Durham has only fourteen (14) days to file objections to this Report and Recommendation, counsel's motion to withdraw is DENIED without prejudice.

## V. Conclusion

For the foregoing reasons, it is recommended that this matter be DISMISSED as time barred.

/s/ *Greg White*
U.S. Magistrate Judge

Date: June 3, 2014

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).** ***See also Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

---

[8] Counsel certifies that a copy of said motion to withdraw has been served upon Durham.