IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROY DURHAM, JR., ) | CASE NO. 1:14 CV 142 |
| ) | |
| Petitioner, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| DONALD MORGAN, Warden, ) | |
| ) | |
| ) | |
| Respondent. ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Greg White. (Docket #18.) The Magistrate Judge recommends that the Petition for Writ of Habeas Corpus (Docket #1) filed pursuant to 28 U.S.C. § 2254 by Petitioner, Roy Durham Jr. be dismissed.

**Facts and Procedural History**

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

I. Summary of Facts

The state appellate court summarized the facts underlying Petitioner's conviction as follows:

[*P4] According to the evidence presented at trial, Durham and the victim, Rosalynn Harrell, were friends, having met in 2005. Harrell worked as a secretary, and took an active role in activities at her church. By 2007, Durham

was living with Harrell at her apartment; although she supported him, he controlled the household finances.

[*P5] On the morning of Tuesday, October 2, 2007, Durham became angry at Harrell, accusing her of having eavesdropped on one of his conversations. He struck her three or four times in the face, then dragged her to the bedroom.

[*P6] Once there he placed her in a chair, struck her again, knocked her to the floor, picked her up, pushed her back onto the chair, then tied her to it. He used two belts and a towel. With one belt, he tied her hands behind the chair. He placed a towel in her mouth as a gag, then tied a smaller belt around her head to hold the towel.

[*P7] When Harrell was secured, Durham told her he believed she was involved in a plot against him. He called her names and threatened to kill her. Occasionally, he untied her hands only to permit her to write confessions about her role.

[*P8] Harrell did not write "fast enough for him" at one point, so Durham went to the kitchen, obtained a knife, and stabbed her in her right shin. Approximately twenty minutes later, he threw salt into her wound.

[*P9] Durham kept Harrell captive in the chair until evening. By that time, he was "calmer," became solicitous, and permitted Harrell to go to bed. The following day, Harrell remained with Durham because she was bruised and fearful of his reaction if she should attempt to leave. He reinforced her fear when he became angry again at something she did, "went to yelling and went to hitting [her] with a meat tenderizer" he was using to crush pain medicine. Harrell attempted to ward off the blows, but one struck her hard in her left hand.

[*P10] On Thursday, Durham escorted Harrell to a grocery store and a "tackle shop"; he drove Harrell's car. He also insisted she wear sunglasses to hide her facial bruises.

[*P11] By Friday, Harrell's leg wound was infected. Durham drove her to an "urgent care" facility, ordered her to explain she sustained her injuries when someone "jumped her," and dropped her off. She obeyed his enjoinder. Durham returned for Harrell as soon as she received some treatment.

[*P12] That evening, Harrell's church pastor, Cornelius White, came to Harrell's apartment, worried because, by that time, she had missed several church obligations for which she had volunteered. White spoke to Durham over the intercom; Durham told White that Harrell was not at home and he thought she was "at her mother's." Durham asked White if he wanted to "come in and see."

[*P13] White demurred, but informed Durham he would return if he did not find Harrell. Although White attempted to contact Harrell's mother, he received no answer. Church matters thereafter replaced his concern over Harrell's whereabouts.

[*P14] Harrell remained in her apartment with Durham the next day and on Sunday, seeking to keep him pacified. Thus, she missed Sunday church services. That evening, Harrell's sister telephoned White, indicating that Harrell had not been in touch with her family for nearly a week. The call galvanized White into action. He assembled four other church members and they proceeded to Harrell's apartment.

[*P15] This time, White and two other churchmen went directly to Harrell's apartment door, pounded on it, and refused to believe Durham when he told them Harrell was not there. White demanded to be admitted. Durham finally opened the door to confront White, but retreated when he saw White's companions.

[*P16] When White entered the apartment, he saw Harrell "laying in a corner broke down in an infant-type position" on the bedroom floor; she appeared "broken." Harrell was unkempt and had difficulty in getting to her feet, so one of the churchmen helped her outside. Upon seeing Harrell's condition, White's wife called the police. Durham, however, did not stay; he drove away in Harrell's car.

[*P17] Emboldened by her church and family, Harrell provided a written statement to the police detailing her experience. She also obtained a protective order against Durham.

[*P18] Durham subsequently was indicted in this case on five counts, charged with two counts of kidnapping, two counts of felonious assault, and one count of intimidation of a crime victim. His case proceeded to a jury trial.

[*P19] The state presented the testimony of Harrell, a few of her acquaintances from church, and police officers who became involved in the case. At the conclusion of the state's case, the trial court granted Durham's motion for acquittal as to one count of kidnapping. Durham elected to present no evidence.

[*P20] The jury found Durham guilty of one count of kidnapping, and the two counts of felonious assault, but not guilty of intimidation. At sentencing, the trial court merged the two counts of felonious assault pursuant to R.C. 2941.25(A), and imposed consecutive terms of five years on count one and four years on count three.

*State v. Durham*, 2011 Ohio App. LEXIS 1914, 2011-Ohio-2256 at ¶¶4-20 (Ohio Ct. App., May 12, 2011).

## II. Procedural History

On January 15, 2010, a jury found Durham guilty of one count of kidnapping and two counts of felonious assault, but not guilty of intimidation of a crime victim or witness. On January 29, 2010 the trial court sentenced Durham to an aggregate term of nine years incarceration.

On February 26, 2010, Durham, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District raising the following assignments of error:

> 1. The trial court erred by permitting the complaining witness to testify based on "refreshed recollection" without a proper foundation.
>
> 2. The trial court erred by admitting hearsay to improperly bolster the testimony of a key state witnesses.
>
> 3. Cumulative error prejudiced Mr. Durham.
>
> 4. The trial court erred by imposing consecutive sentences without making findings as required by R.C. 2929.14(E).
>
> 5. The conviction and sentence violates Mr. Durham's Right to the effective assistance of counsel.

(Docket #8-1, Exh. 7.)

On May 12, 2011, Durham's conviction and sentence were affirmed. (Docket #8-1, Exh. 9.)

Durham did not file an appeal with the Supreme Court of Ohio.

On March 12, 2011, Durham, *pro se*, filed a petition to vacate or set aside his judgment. On March 5, 2011, the State filed a motion for summary judgment. On June 28, 2011, the trial court entered a *nunc pro tunc* entry granting the State's motion for summary judgment on Durham's petition. (Docket #8-2, Exh. 20.)

Several months later, on December 1, 2011, Durham filed a motion for findings of fact and conclusions of law with respect to his previously denied petition to vacate his sentence (Docket #8-2, Exh. 31.) On February 9, 2012, the trial court issued its findings of fact and conclusions of law indicating that Durham's claims were barred by *res judicata*.

On March 2, 2012, Durham appealed the denial of his petition to vacate arguing that the trial court: (1) erred by failing to make specific findings of fact and conclusions of law regarding

-4-

the claim of ineffective assistance of trial counsel; and, (2) abused its discretion by dismissing Durham's petition without a hearing. (Docket #8-2, Exh. 22 &23.)

On September 13, 2012, the state appellate court held as follows:

[*P1] Defendant-appellant Roy Durham, Jr. sought postconviction relief from his conviction for felonious assault and kidnapping. He claimed that he was denied the effective assistance of counsel because his trial attorney failed to investigate and subpoena potential witnesses and failed to utilize exculpatory evidence at trial. The state argued that Durham's claims were barred by *res judicata* because the evidence submitted in support of the petition was available to Durham prior to trial. The court denied relief finding that none of the documents that Durham offered were outside the original record and that other evidence did not amount to newly discovered evidence outside the record.

[*P2] R.C. 2953.21(A)(1) permits a person convicted of a criminal offense, and who claims that there was a denial or infringement of the person's rights under either the Ohio Constitution or the United States Constitution, to file a petition asking the court to vacate or set aside the judgment. R.C. 2953.21(A)(2) states that a petition for postconviction relief must be filed "no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction[.]" The time requirements for postconviction relief under R.C. 2953.21(A) are jurisdictional. *State v. Hutton*, 8th Dist. No. 80763, 2007 Ohio 5443, ¶23.

[*P3] The state argues that Durham did not timely file his petition for postconviction relief[.] It maintains that the record in Durham's direct appeal was filed June 10, 2010 and that Durham did not file his petition for postconviction relief until March 12, 2011 — a time period exceeding 180 days. It further argues that Durham did not explain the delay by advising the court that he had been "unavoidably prevented" from discovering the facts that he was relying upon in the petition nor did he claim entitlement to a new federal or state right that applied retroactively to his situation. *See* R.C. 2953.23(A).

[*P4] The state's recitation of facts is correct — more than 180 days elapsed from the time the record was filed in Durham's direct appeal to the time he filed his petition for postconviction relief. So on the face of the record, Durham's petition was untimely.

[*P5] Although Durham filed a supplemental record in his direct appeal on September 13, 2010, this filing did not extend the time in which to file the petition for postconviction relief. The filing of a supplemental record "is irrelevant for the purposes of the 180-day time limit for a postconviction relief petition." *State v. Rice*, 11th Dist. No. 2010-A-0046, 2011 Ohio 3746, ¶ 26. "For

purposes of determining when the 180-day time period for filing a postconviction relief petition shall accrue, only the certified, written transcript constitutes a 'transcript' under App.R. 9 and R.C. 2953.21(A)(2) * * *." *State v. Everette*, 129 Ohio St. 3d 317, 2011 Ohio 2856, 951 N.E.2d 1018, syllabus. And in *State v. Chavis-Tucker*, 10th Dist. No. 05AP-974, 2006 Ohio 3105, the court of appeals rejected a contention that the 180-day time period to file a petition for postconviction relief began from the filing of two supplemental transcripts of pretrial hearings. *Id.* at ¶ 7-9.

[*P6] The rationale behind these holdings is that an appellant should not be allowed to unilaterally extend the statute's time limitation by filing irrelevant transcripts of pretrial hearings months after the filing of his trial transcript. *State v. Johnson*, 11th Dist. No. 99-T-0143, 2001 Ohio App. LEXIS 494 (Feb. 9, 2001); *Chavis-Tucker* at ¶ 8.

[*P7] Durham received permission to supplement the record with proceedings in CR-504209. That was a previous case number involving the same charges. It had been dismissed without prejudice by the state and refiled as CR-525549. Nothing in the record from CR-504209 had any relevance to the appeal from Durham's conviction in CR-525549. Durham also received permission to supplement the record with proceedings from a domestic violence case in the Bedford Municipal Court. Again, the record from the municipal court case had no relevance to the appeal in CR-525549.

[*P8] Although the court did not state timeliness as a basis for denying the requested relief, we may *sua sponte* raise timeliness because it is a jurisdictional issue. *State v. Hill*, 160 Ohio App.3d 324, 2005 Ohio 1501, 827 N.E.2d 351, ¶ 15 (8th Dist.). We conclude that the filing of the supplemental record in Durham's direct appeal did not extend the time to file a petition for postconviction relief. The certified, written transcript from that appeal was filed on June 10, 2010. Durham did not file his petition for postconviction relief until March 12, 2011 — a period in excess of 180 days. This deprived the court of jurisdiction to consider the petiton for postconviction relief.

*State v. Durham*, 2012 Ohio App. LEXIS 3674, 2012-Ohio-4165 at ¶¶1-8 (Ohio Ct. App., Sept. 13, 2012).

On October 17, 2012, Durham, through counsel filed a notice of appeal. After briefing, on January 23, 2013, jurisdiction was declined.

On August 10, 2011, Durham, *pro se*, filed an application to reopen his appeal pursuant to Ohio App. R. 26(B) arguing ineffective assistance of counsel. (Docket #8-1, Exh. 10.) On October 20, 2011, counsel for Durham filed a Notice of Appearance and filed leave the next day to file a supplemental application. (Docket #8, Exhs. 11, 32.) On October 5, 2011,

-6-

Durham's *pro se* Rule 26(B) application was stricken *sua sponte* as exceeding page limitations. (Docket #8-2, Exh. 32.) Nonetheless, the state appellate court granted counsel's motion for leave to file a supplemental application, which the court treated as a motion to file an application that complied with the rules. *Id.* On November 21, 2011, Durham's counsel filed the application to reopen. (Docket #8-1, Exh. 11.)

On May 4, 2012, the state appellate court denied the application to reopen. (Docket #8-2, Exh. 15.) As with the denial of his direct appeal, Durham did not seek review by the Ohio Supreme Court.

On January 22, 2014, Durham filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

GROUND ONE: Ineffective Assistance of Trial Counsel.

GROUND TWO: Ineffective Assistance of Appellate Counsel.

GROUND THREE: Trial Court improperly erred by permitting victim to testify based upon "refreshed recollection" without a proper foundation.

GROUND FOUR: Trial Court erred in allowing the Prosecution to improperly bolster.

GROUND FIVE: Cumulative error by Trial Court unfairly prejudiced Durham.

GROUND SIX: Trial Court improperly imposed consecutive sentences.

(Docket #1.)

On March 14, 2014, Warden Donald Morgan (hereinafter "Respondent") filed a Motion to Dismiss the petition as time-barred. (Docket #8.) Petitioner, through counsel, filed a Response to the Motion to Dismiss on March 24, 2014. (Docket #9.)

## Report and Recommendation

On June 4, 2014, the Magistrate Judge issued his Report and Recommendation. (Docket # 18.) The Magistrate Judge recommends the Petition be dismissed as time-barred, as it was filed

after the one-year statute of limitations expired under 28 § U.S.C. 2254. The Magistrate Judge calculated the statutory period for filing a timely Petition for Federal Writ of Habeas Corpus expired on March 22, 2013. The Magistrate Judge noted that even if Petitioner was entitled to statutory tolling, the statute of limitations would have expired on December 11, 2013. Petitioner filed his Petition on January 22, 2014. Furthermore, the Magistrate Judge found no basis upon which to equitably toll the statutory period. (Docket # 18.)

On June 23, 2014, Petitioner filed his Objection to the Report and Recommendation of the Magistrate Judge. (Docket #19.) In his Objection, Petitioner reiterates the arguments presented to the Magistrate Judge and contends that his "failure to meet legally-mandated deadlines unavoidably arose from circumstances beyond his control." (Docket #19, at 4).

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case de novo. FED. R. CIV. P. 72(b) states:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

### Conclusion

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo*, considering the Objections of Petitioner. The Court finds the Magistrate Judge's Report and

Recommendation to be thorough, well-supported, and correct. The Court does not find the objections raised by Petitioner to be persuasive. The Report and Recommendation fully and accurately addresses all of Petitioner's claims. The claims raised by Petitioner are meritless and do not present any legal or factual arguments not addressed by the Magistrate Judge's Report and Recommendation. Accordingly, there is no basis upon which to excuse Petitioner's untimely delay in filing and no basis upon which to equitably toll the statute of limitations.

After careful evaluation of the record, this Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own. The Report and Recommendation (Docket #18) is ADOPTED. Respondent's Motion to Dismiss the Habeas Petition, on the basis that the Petition is time-barred (Docket #8), is GRANTED.

The Petition for Writ of Habeas Corpus filed by Roy Durham Jr. pursuant to 28 U.S.C. § 2254 (Docket #1) is hereby DISMISSED.

**Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484. Where the petition has been denied on a procedural ground without reaching the underlying constitutional claims, the court must find that the petitioner has demonstrated that reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right *and* that reasonable jurists could debate whether the district court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated in the Magistrate Judge's Report and Recommendation, a reasonable jurist could not conclude that dismissal of the Petition is in error or that Petitioner should be permitted to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: October 15, 2014